1

2

3

4

5

6

7

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON AT SEATTLE

8

| | |
|---|---|
| 9  HT REDMOND LLC, a Washington limited<br>liability company,<br><br>10<br><br>Plaintiff,<br>11<br><br>v.<br>12<br><br>HK HEYCHA LIMITED d/b/a HEYTEA, a<br>13  Hong Kong limited company; XIAOBIN XU,<br>an individual; ZHICHAO LIU, an individual;<br>14  JOHN DOES 1-10, d/b/a HEYTEA,<br><br>15<br>Defendants. | Case No. 2:25-cv-02572-TLF<br><br>**DEFENDANT HEYTEA'S MOTION<br>TO DISMISS, OR IN THE<br>ALTERNATIVE, TO COMPEL<br>ARBITRATION**<br><br>NOTE FOR HEARING: February 12, 2026 |

16

17      Defendant HK Heycha Limited d/b/a Heytea ("Heytea") hereby moves to dismiss this

18  action for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) or, in

19  the alternative, to compel arbitration pursuant to the parties' agreement. In making this Motion,

20  Heytea relies on this memorandum, the Declaration of Christy Cheng (and Exhibit A thereto), and

21  the complete files and records in this action.

22  **I.      INTRODUCTION**

23      Simply put: this case is in the wrong forum. *First*, HT Redmond's claims arise entirely

24  under state law and there is no basis for federal jurisdiction. Diversity is lacking because Plaintiff's

25  own disclosures confirm that its membership includes a non-citizen, and all defendants are foreign.

26  The Court therefore cannot exercise jurisdiction under 28 U.S.C. § 1332(a)(2). *Second*, the parties

MOTION TO DISMISS,
OR IN THE ALTERNATIVE,
TO COMPEL ARBITRATION - 1

MILLER NASH LLP
605 5TH AVE S | SUITE 900
SEATTLE, WA 98104
206.624.8300 | FAX: 206.340.9599

1  agreed that arbitration—not litigation—is the exclusive method for resolving disputes. Heytea

2  therefore asks the Court to dismiss this action for lack of subject-matter jurisdiction or,

3  alternatively, compel arbitration pursuant to Section 4 of the Federal Arbitration Act ("FAA"), 9

4  U.S.C. § 4, and Section 17E and Exhibit G of the parties' Agreement, which require that disputes

5  "arising out of or related to" the Agreement be submitted to binding arbitration.

6  **II.      STATEMENT OF RELEVANT FACTS**

7      Heytea is a prominent Chinese brand known for its freshly prepared tea beverages. (*See*

8  Declaration of Christy Cheng ("Cheng Decl.") ¶ 2.) Plaintiff HT Redmond LLC ("HT Redmond")

9  alleges that in 2024 it entered into a written agreement with Heytea to operate a retail beverage

10  store in Redmond, Washington. (*See generally* Dkt. #1, Compl.; Cheng Decl. Ex. A (the

11  "Agreement").) According to its corporate disclosure statement, HT Redmond has two members:

12  Yue ("Alison") Deng, a U.S. citizen domiciled in Washington, and Yue ("Sia") Zhang, a lawful

13  permanent resident domiciled in Washington. (Dkt. #6 at 1.)

14      HT Redmond claims that, before executing the Agreement, Heytea had misrepresented its

15  authorization to sell franchises in Washington and, based on those representations, induced HT

16  Redmond to enter the Agreement and invest substantial sums in building out a Heytea retail

17  location. (Compl. ¶¶ 1–6, 15–23.) After the relationship deteriorated, HT Redmond filed this

18  lawsuit asserting state-law claims under Washington's Franchise Investment Protection Act

19  ("FIPA") and common law fraud. It seeks rescission of the contract and damages, including lost

20  profits, exceeding $2 million. (*See id.* at pp. 9–13.) Critically, however, HT Redmond

21  acknowledges that it executed the Agreement with Heytea on June 27, 2024 (*id.* ¶ 23), and that

22  Agreement contains a broad arbitration clause requiring that "all controversies, disputes, or claims

23  . . . arising out of or related to this Agreement . . . be submitted for binding arbitration." (Agreement

24  § 17E.)

25

26

MOTION TO DISMISS,
OR IN THE ALTERNATIVE,
TO COMPEL ARBITRATION - 2

Miller Nash LLP
605 5th Ave S | Suite 900
Seattle, WA  98104
206.624.8300 | Fax: 206.340.9599

1  III.   **LEGAL STANDARDS**

2      **A.      Motion to Dismiss under Rule 12(b)(1)**

3      Federal courts are courts of limited jurisdiction and thus "[t]he party seeking to invoke the

4  district court's diversity jurisdiction always bears the burden of both pleading and proving

5  diversity jurisdiction." *NewGen, LLC v. Safe Cig, LLC*, 840 F.3d 606, 613–14 (9th Cir. 2016).

6  Rule 8(a)(1) requires a "short and plain statement of the grounds of the court's jurisdiction" and

7  Local Rule 8(a) more specifically requires LLCs to "identify the citizenship of the

8  owners/partners/members of those entities to establish the court's jurisdiction." On a Rule 12(b)(1)

9  motion to dismiss, the Court is not required to accept as true plaintiff's allegations asserting proper

10  subject matter jurisdiction. *Robinson v. United States*, 586 F.3d 683, 685 (9th Cir. 2009).

11      **B.      Motion to Compel Arbitration**

12      Congress, by enacting the FAA, 9 U.S.C. § 2, established a "liberal federal policy favoring

13  arbitration." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (internal quotation

14  omitted). The FAA applies to any "written provision in . . . a contract evidencing a transaction

15  involving commerce." 9 U.S.C. § 2. Under the FAA, arbitration agreements are "valid, irrevocable

16  and enforceable, save upon such grounds as exist at law or in equity for the revocation of any

17  contract." 9 U.S.C. § 2.

18      The district court plays a limited role in applying the FAA. The statute directs courts to

19  send parties to arbitration whenever an agreement to arbitrate exists. *See Cox v. Ocean View Hotel*

20  *Corp.*, 533 F.3d 1114, 1119 (9th Cir. 2008). The court's inquiry is confined to two questions:

21  (1) whether a valid arbitration agreement was formed, and (2) whether the dispute falls within its

22  scope. *See id.* But where the parties have "clearly and unmistakably" delegated questions regarding

23  arbitrability to the arbitrator, the Court need not reach the second inquiry. *Rent-A-Ctr., W., Inc. v.*

24  *Jackson*, 561 U.S. 63, 68–70 (2010); *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015).

25  Thus, when a valid arbitration agreement exists—and especially where the parties have delegated

26

MOTION TO DISMISS,
OR IN THE ALTERNATIVE,
TO COMPEL ARBITRATION - 3

MILLER NASH LLP
605 5TH AVE S | SUITE 900
SEATTLE, WA  98104
206.624.8300 | FAX: 206.340.9599

1 arbitrability questions to the arbitrator—the FAA leaves no room for judicial discretion: the court

2 must enforce the agreement according to its terms.

3       Washington law also favors enforcement of arbitration provisions. Contract interpretation

4 and enforcement are generally governed by state law, and Washington courts apply the same strong

5 presumption in favor of arbitration as federal courts. *See Zuver v. Airtouch Commc'ns, Inc.*, 103

6 P.3d 753, 758–59, 153 Wn.2d 293, 301–02 (2004). The burden to show that an arbitration

7 agreement is unenforceable rests on the party opposing arbitration. *See id.*; *Mortensen v. Bresnan*

8 *Commc'ns, LLC*, 722 F.3d 1151, 1157 (9th Cir. 2013). "Courts must indulge every presumption

9 in favor of arbitration, whether the problem at hand is the construction of the contract language

10 itself or an allegation of waiver, delay, or a like defense to arbitrability." *Zuver*, 103 P.3d at 759,

11 153 Wn.2d at 301 (internal quotation omitted).

12 **IV.**    **ARGUMENT**

13      **A.**    **This Court Lacks Subject-Matter Jurisdiction.**

14       HT Redmond invokes diversity jurisdiction under 28 U.S.C. § 1332(a)(2), asserting that

15 this case is between "a citizen of this State and citizens of a foreign State." (Compl. ¶ 12). However,

16 no such diversity exists here. The Complaint alleges only that HT Redmond is "a Washington

17 limited liability company with its principal place of business" in Washington. (*Id.* ¶ 7.) Setting

18 aside that HT Redmond has failed to even facially comply with Local Rule 8(a)—which is an

19 independent ground to dismiss the Complaint in its entirety—its Corporate Disclosure Statement

20 shows that its asserted grounds are invalid. (*See* Dkt. #6 at p. 1.)

21       As the Local Rules recognize, an LLC's citizenship is not determined by its state of

22 formation or principal place of business, but by the citizenship of each of its members. *Johnson v.*

23 *Columbia Props. Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006). According to its Corporate

24 Disclosure Statement, HT Redmond's members are Yue ("Alison") Deng, who is a "citizen of

25 Washington" and Yue ("Sia") Zhang, who "is a permanent legal resident who is domiciled in

26 Washington state." (Dkt. #6 at 1.) HT Redmond thus has Washington citizenship and foreign

MOTION TO DISMISS,
OR IN THE ALTERNATIVE,
TO COMPEL ARBITRATION - 4

MILLER NASH LLP
605 5TH AVE S | SUITE 900
SEATTLE, WA  98104
206.624.8300 | FAX: 206.340.9599

1   citizenship. The named defendants are all foreign individuals or entities. (*See* Dkt. #1 at p. 3–4

2   ¶¶ 8–11.) In short, HT Redmond cannot establish complete diversity because its citizenship is

3   foreign and all defendants are foreign; this Court lacks jurisdiction over the case.

4       The diversity statute confers jurisdiction in civil cases involving a U.S. citizen on one side

5   of the action and subjects of a foreign state on the other. Specifically, Section 1332(a)(2) provides:

6       The district courts shall have original jurisdiction of all civil actions where the
    matter in controversy exceeds the sum or value of $75,000, exclusive of interest
7       and costs, and is between . . . **citizens of a State and citizens or subjects of a**
    **foreign state**, except that the district courts shall not have original jurisdiction
8       under this subsection of an action between citizens of a State and citizens or
    subjects of a foreign state who are lawfully admitted for permanent residence in the
9       United States and are domiciled in the same State[.]

10  28 U.S.C. § 1332(a)(2) (emphasis added). Section 1332(a) also requires "complete diversity" of

11  citizenship—"each plaintiff must be of a different citizenship from each defendant." *Grancare,*

12  *LLC v. Thrower*, 889 F.3d 543, 548 (9th Cir. 2018); *accord Faysound, Ltd. v. United Coconut*

13  *Chems., Inc.*, 878 F.2d 290, 294–95 (9th Cir. 1989) (no diversity jurisdiction in action by one

14  foreign subject against another, even if there is a citizen defendant present); *see also Sixa*

15  *Operations, LLC v. Minchenko*, No. 19-CV-04219-JD (DMR), 2021 WL 7448536, at *3 (N.D.

16  Cal. Jan. 19, 2021), *report and recommendation adopted*, No. 3:19-CV-04219, 2021 WL 7448535

17  (N.D. Cal. Feb. 18, 2021) ("Plaintiff must affirmatively allege that its citizenship does not overlap

18  with the citizenship of [any] Defendant.").

19      Even if Yue Zhang was domiciled in Washington at the time the Complaint was filed, she

20  cannot be a citizen of Washington unless she is also a citizen of the United States. Under current

21  law, lawful permanent residents are not "citizens of a State" for diversity purposes.[1] *See Guan v.*

---

[1] This was not always the rule. Before 2011, the diversity statute included a "deeming clause" that treated lawful permanent residents as citizens of their U.S. state of domicile for diversity purposes. *See* 28 U.S.C. § 1332(a) (1988). Courts recognized, however, that this clause sometimes produced unconstitutional results. *See Matao Yokeno v. Sawako Sekiguchi*, 754 F.3d 649, 654 (9th Cir. 2014). Congress therefore eliminated the clause through the Federal Courts Jurisdiction and Venue Clarification Act of 2011, clarifying that permanent resident aliens are never deemed citizens for diversity purposes—except that they can destroy diversity when

MOTION TO DISMISS,
OR IN THE ALTERNATIVE,
TO COMPEL ARBITRATION - 5

MILLER NASH LLP
605 5TH AVE S | SUITE 900
SEATTLE, WA  98104
206.624.8300 | FAX: 206.340.9599

*Bi*, No. 13-CV-05537, 2014 WL 953757, at \*5 (N.D. Cal. Mar. 6, 2014) (citing H.R. Rep. No. 112-10, *available at* 2011 WL 484052, at 7); *see also Tagger v. Strauss Grp. Ltd.*, No. 18-CV-2923, 2018 WL 4356725, at \*4 (E.D.N.Y. Sept. 12, 2018), *aff'd*, 951 F.3d 124 (2d Cir. 2020) ("[P]laintiff's domicile is not operative for the purposes of diversity jurisdiction. Despite the fact that plaintiff has lawful permanent resident status, plaintiff . . . is considered to be an alien."); *H.K. Huilin Intern. Trade Co., Ltd. v. Kevin Multiline*, 907 F.Supp.2d 284, 288–89 (E.D.N.Y. 2012) (holding that Chinese citizen living in New York "opposite plaintiff, a Chinese corporation, destroys complete diversity *regardless of his permanent residence status*" (emphasis added)). To show state citizenship for diversity purposes under federal common law a party must (1) be a citizen of the United States, and (2) be domiciled in the state. *Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088, 1090 (9th Cir. 1983); *see also Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 828 (1989) ("In order to be a citizen of a State within the meaning of the diversity statute, a natural person must both be a citizen of the United States and be domiciled within the State."); *see also Digital Media Sols., LLC v. Zeetogroup, LLC*, No. 3:22-CV-01184-AHG, 2024 WL 1268164, at \*4 (S.D. Cal. Mar. 25, 2024) (collecting cases). This case does not meet this standard. Because HT's membership includes a non-citizen, all defendants are foreign, and complete diversity is absent.

The final clause of subsection (2)(a) does not give the Court permission to treat lawful permanent residents as "citizens of a State" either. *See* 28 U.S.C. § 1332(a)(2) ("except that the district courts **shall not** have original jurisdiction under this subsection of an action between citizens of a State and citizens or subjects of a foreign state who are lawfully admitted for permanent residence in the United States and are domiciled in the same State") (emphasis added).

---

domiciled in the same state as a U.S. citizen. *See* H.R. Rep. No. 112-10, 2011 WL 484052, at \*7 ("By eliminating the proviso, resident aliens would no longer be deemed to be U.S. citizens for purposes of diversity jurisdiction."). In doing so, Congress singled out *Singh v. Daimler-Benz AG*, 9. F.3d 303 (3d Cir. 1993), as a "problem" case involving foreign parties on both sides—like here—stating that it would have "failed to support a finding of jurisdiction under either paragraphs 1332(a)(2) or (a)(3) in the absence of the deeming provision." 2011 WL 484052, at \*7.

MOTION TO DISMISS,
OR IN THE ALTERNATIVE,
TO COMPEL ARBITRATION - 6

MILLER NASH LLP
605 5TH AVE S | SUITE 900
SEATTLE, WA 98104
206.624.8300 | FAX: 206.340.9599

1 | The clause exists "for purposes of destroying jurisdiction, not creating it." *Alexanian v. FCA US,*

2 | *LLC*, No. 19CV2448, 2020 WL 949071, at *2 (S.D. Cal. Feb. 27, 2020) (discussing Ninth Circuit

3 | precedent and holding, "The Court therefore reads § 1332(a)(2) as treating a foreign citizen

4 | permanently admitted for residency in the U.S. as a citizen for purposes of destroying jurisdiction,

5 | but not creating it. Such a construction avoids what is otherwise probably an unconstitutional

6 | result."). Lawful permanent residents are treated as foreign citizens for diversity purposes, and

7 | their status cannot be used to create jurisdiction—only to defeat it.

8 | Finally, there is no way for HT Redmond to cure this defect; the Complaint must be

9 | dismissed. Jurisdiction under § 1332 is determined at the time the action is filed and cannot be

10 | retroactively created. *See Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 571 (2004). So

11 | for example, even if HT Redmond's foreign member were to obtain U.S. citizenship during the

12 | pendency of the case or divest her ownership interest in the LLC, those changes would not confer

13 | jurisdiction. *See id.* The Supreme Court has made clear that post-filing changes in citizenship

14 | cannot cure a lack of complete diversity. *Id.* at 574–75 ("[A]llowing a citizenship change to cure

15 | the jurisdictional defect that existed at the time of filing would contravene [controlling law].").

16 | Accordingly, because diversity was absent when this suit commenced and it cannot be cured,

17 | dismissal with prejudice is mandatory.

18 | **B.      Alternatively, this Court Should Compel Arbitration.**

19 | Even if jurisdiction existed, the FAA mandates enforcement of valid arbitration

20 | agreements. The parties' Agreement contains the following Arbitration Provision:

21 | Subject to the provisions in the Washington Franchise Agreement Addendum as attached in Exhibit G hereto, **We and You agree that all controversies, disputes, or claims between us** or any of our Affiliates, and our and their respective shareholders, officers, directors, agents, and employees, on the one hand, and you (and your owners, guarantors, affiliates, and employees), on the other hand, **arising out of or related to**: (i) this Agreement or any other agreement between you (or any of your owners) and us (or any of our Affiliates); (ii) our relationship with you; **(iii) the scope or validity of this Agreement or any other agreement between you (or any of your owners) and us (or any of our Affiliates) or any provision of any such agreements (including the validity and scope of the arbitration provision under this Section, which we and you acknowledge is to be**

MOTION TO DISMISS,
OR IN THE ALTERNATIVE,
TO COMPEL ARBITRATION - 7

1
2
3
4
5
6

**determined by an arbitrator, not a court);** or (iv) any System Standard, **must be submitted for binding arbitration, on demand of either party, to [the Shenzhen Court of International Arbitration ("SCIA")].** The arbitration proceedings will be conducted by one arbitrator and, except as this Section otherwise provides, according to the then-current arbitration rules of the SCIA. All proceedings will be conducted at a location in city of Shenzhen, Guangzhou province, China. The interim and final awards of the arbitrator shall be final and binding upon each party, and judgment upon the arbitrator's awards may be entered in any court of competent jurisdiction.

\*\*\*

7
8
9

**Both We and You irrevocably agree that the arbitration is the exclusive dispute resolution mechanism between the parties and a litigation shall not be used to solve any disputes concerning, in connection with, or arising out of this Agreement.**

10

Agreement § 17E (emphasis added). The Exhibit G Addendum contains the following relevant

11

provisions:

12
13

In the event of a conflict of laws, the provisions of the Washington Franchise Investment Protection Act, Chapter 19.100 RCW (Revised Code Washington) will prevail.

\*\*\*

14
15
16
17
18

**In any arbitration or mediation involving a franchise purchased in Washington, the arbitration or mediation site will be either in the state of Washington, or in a place mutually agreed upon at the time of the arbitration or mediation,** or as determined by the arbitrator or mediator at the time of arbitration or mediation. In addition, **if litigation is not precluded by the franchise agreement, a franchisee may bring an action or proceeding arising out of or in connection with the sale of franchises, or a violation of the Washington Franchise Investment Protection Act, in Washington.**

19

(Emphasis added.)

20

HT Redmond agreed that all disputes "arising out of or related to" the Agreement must be

21

submitted to binding arbitration. It also agreed that "arbitration is the exclusive dispute resolution

22

mechanism between the parties and a litigation shall not be used to solve any disputes concerning,

23

in connection with, or arising out of this Agreement." Because litigation is precluded, the second

24

sentence of Exhibit G (allowing HT Redmond to bring a lawsuit) is never triggered. Exhibit G

25
26

MOTION TO DISMISS,
OR IN THE ALTERNATIVE,
TO COMPEL ARBITRATION - 8

MILLER NASH LLP
605 5TH AVE S | SUITE 900
SEATTLE, WA  98104
206.624.8300 | FAX: 206.340.9599

1  therefore only potentially modifies the location of the arbitration—a modification endorsed by the

2  Washington Department of Financial Services ("DFI").[2]

3    The parties clearly and unmistakably delegated the question of arbitrability to the arbitrator

4  and there are no grounds to ignore the agreement. (Agreement § 17E) ("the validity and scope of

5  the arbitration provision under this Section, which we and you acknowledge is to be determined

6  by an arbitrator, not a court"). In general, "[l]ike other contracts," arbitration clauses "may be

7  invalidated by 'generally applicable contract defenses, such as fraud, duress, or

8  unconscionability.'" *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68 (2010) (quoting *Doctor's*

9  *Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996)). To do so, however, the party disputing

10  arbitration must challenge the validity of the "**precise agreement to arbitrate at issue**" rather

11  than the contract as a whole in order for the court to decide the question. *Thomas v. Barclays Bank*

12  *Del.*, No. C20-5937-JCC-MLP, 2021 WL 9649851, at *6 (W.D. Wash. Mar. 2, 2021) (emphasis

13  added).

14    HT Redmond does not challenge the arbitration agreement itself. In its Complaint, HT

15  Redmond alleges it was fraudulently induced to enter the Agreement for two reasons: (1) Heytea

16  allegedly "represented it was a franchisor in Washington" and (2) Heytea allegedly "intentionally

17  concealed its ongoing discussions with DFI." (Compl. ¶ 46.) These allegations target the

18  Agreement as a whole, which is insufficient to require judicial determination. *See Krause v.*

19  *Expedia Grp., Inc.*, No. 2:19-CV-00123-BJR, 2019 WL 4447317, at *5 (W.D. Wash. Sept. 17,

20  2019) ("As the Ninth Circuit has established, the 'specificity in challenge' rule requires the attack

21  on an arbitration or delegation clause to be "a distinct question from the validity of the contract as

22

23

24

25

---

26  [2] *See* Wash. Franchise Act Interpretive Statement FIS-04 (Jan. 1, 1991), *available at* https://dfi.wa.gov/industry/franchise-act-interpretive-statements/franchise-act-interpretive-statement-fis-04.

MOTION TO DISMISS,
OR IN THE ALTERNATIVE,
TO COMPEL ARBITRATION - 9

1    a whole.'" (quoting *Bridge Fund Cap. Corp. v. Fastbucks Franchise Corp.*, 622 F.3d 996, 998 (9th

2    Cir. 2010)).

3           Nor does HT Redmond's claim that Heytea violated FIPA invalidate the arbitration

4    provision. In *Allison v. Medicab Int'l, Inc.*, 597 P.2d 380, 382, 92 Wn.2d 199, 203 (1979), the

5    Washington Supreme Court held that allegations of fraudulent inducement and failure to register

6    under FIPA do not negate an agreement to arbitrate. The court explained that "[t]he failure to

7    register . . . is simply a controversy 'arising out of or in connection with (the) Agreement' and as

8    such becomes subject to the arbitration agreement . . . ." *Id.* at 203. It further held that "the federal

9    arbitration act requires enforcement of the arbitration clause in the franchise agreement despite the

10   judicial remedies afforded by the Franchise Investment Protection Act." *Id.* at 204. Accordingly,

11   HT Redmond's FIPA allegations, even if true, do not affect the enforceability of the arbitration

12   clause, which remains binding under both state and federal law.

13          Recent decisions in this District confirm that similar arguments fail. In *Taylor, Trustee for

14   Estate of Taylor v. Rothschild*, No. C18-5863 BHS, 2019 WL 3067255, at *6 (W.D. Wash. July

15   12, 2019), the Court enforced an arbitration agreement under facts nearly identical to those alleged

16   here: the franchisor was in discussions with DFI when the Franchise Agreement was executed but

17   had not yet been approved to sell franchises in Washington. The franchisees attempted to

18   distinguish *Allison* by citing to DFI's investigation of the franchisor and a Notice directing the

19   franchisor to cease and desist because the specific arbitration clause's venue provision requiring

20   arbitration in Colorado was improper. *Id.* at *5. The Court rejected these arguments, holding that

21   the Notice did not have the "force of law" necessary to invalidate the arbitration provision. *Id.* at

22   *5.

23          Similarly, in *Blanchat v. Smash Franchise Partners, LLC*, No. 2:20-CV-0380-TOR, 2020

24   WL 7364978, at *4 (E.D. Wash. Dec. 15, 2020), the Court enforced an arbitration provision where

25   the parties delegated arbitrability questions to the arbitrator and the parties "spent weeks discussing

26   the franchise opportunity before entering into the commercial contract." That reasoning applies

MOTION TO DISMISS,
OR IN THE ALTERNATIVE,
TO COMPEL ARBITRATION - 10

here: HT Redmond admits it initiated discussions with Heytea in June 2023 and did not execute the Agreement until July 2024. (Compl. ¶ 23.) Moreover, to the extent any ambiguity exists, the FAA requires that it be resolved in favor of arbitration. *See AT&T Mobility*, 563 U.S. at 339.

There is no basis to disregard the parties' agreement to arbitrate. The FAA mandates enforcement, and the Agreement is unequivocal: arbitration is the exclusive dispute resolution mechanism for all disputes "arising out of or related to" the Agreement—including disputes over arbitrability. HT Redmond has not alleged fraud, duress, or unconscionability directed at the arbitration clause itself, nor does HT Redmond's reliance on FIPA change the analysis. HT Redmond's own allegations demonstrate the arbitration clause's enforceability. This Court should honor the parties' Agreement and compel arbitration as required by controlling caselaw.

## V.   **CONCLUSION**

Heytea respectfully requests that the Court dismiss the Complaint in its entirety because HT Redmond has failed to establish subject matter jurisdiction under Rule 12(b)(1). In the alternative, the Court should compel arbitration under the FAA for the reasons set forth above.

The undersigned hereby certifies that this memorandum contains 3,596 words, in compliance with the Local Civil Rules.

Dated:  January 15, 2026                              Respectfully submitted,


By:  */s/Daniel J. Oates*
     Daniel J. Oates, WSB No. 39334
     Attorney for Defendant HK HEYCHA
     LIMITED d/b/a HEYTEA

MOTION TO DISMISS,
OR IN THE ALTERNATIVE,
TO COMPEL ARBITRATION - 11

MILLER NASH LLP
605 5TH AVE S | SUITE 900
SEATTLE, WA  98104
206.624.8300 | FAX: 206.340.9599

1

**DECLARATION OF SERVICE**

2        I, Jennifer Schnarr, hereby declare under penalty of perjury under the laws of the United

3   States that I caused the foregoing DEFENDANT HEYTEA'S MOTION TO DISMISS, OR IN

4   THE ALTERNATIVE, TO COMPEL ARBITRATION to be filed with the Clerk of the Court

5   via the CM/ECF system which will send notice of the same to all registered users.

6        *I declare under penalty of perjury that the foregoing is true and correct to the best of my*

7   *knowledge.*

8        EXECUTED in Burien, Washington on this 15ᵗʰ day of January, 2026.

9

10                                          */s/Jennifer Schnarr*
                                           Jennifer Schnarr, Legal Assistant
                                           Jennifer.Schnarr@millernash.com

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

DECLARATION OF SERVICE - 12

MILLER NASH LLP
605 5TH AVE S | SUITE 900
SEATTLE, WA 98104
206.624.8300 | FAX: 206.340.9599